IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| E. Hood Temple, as Personal | ) | Civil Action No.: 4:11-cv-00128-RBH |
| Representative of the Estate of | ) | |
| Genie H. Temple, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| v. | ) | |
| | ) | |
| Mutual of Omaha Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff E. Hood Temple, as Personal Representative of the Estate of Genie H. Temple

("Plaintiff") filed this lawsuit alleging breach of contract and bad faith on the part of Defendant

Mutual of Omaha Insurance Company ("Defendant") regarding a claim made by Genie H. Temple

pursuant to a long-term care insurance policy. This matter is before the Court on Defendant's

Motion for Summary Judgment [Doc. # 41]. On December 10, 2012, the Court heard from the

parties regarding Defendant's Motion. For the reasons discussed below, Defendant's Motion is

granted.

**Undisputed Facts**

In 1988, Genie Temple purchased a long-term care policy with Aetna Long-Term Care,

which was ultimately assigned to Defendant. [Pl.'s Resp., Doc. # 62, at 1; Long-Term Care Policy,

Doc. # 41-1.] This Policy, which entitled Ms. Temple to long-term care payments from Defendant

after an authorized stay, remained in force through the circumstances giving rise to this case. [*See*

*id.*]

In a letter dated September 28, 2009, and stamped received on October 2, 2009, E. Hood

Temple first advised Defendant that his mother, Ms. Temple, had become ill and would require long-

term care sometime in the future. [9/28/2009 Temple Letter, Doc. # 41-6.] The letter also requested

claim forms and explained that Mr. Temple, an attorney, was representing Ms. Temple. [*Id.*]

On October 15, 2009, Ms. Temple checked into Methodist Manor in Florence, South

Carolina, to begin receiving long-term care. [*See* Def. Mot., Doc. # 41, at 16; Pl.'s Resp. at 2.]

Pursuant to an elimination period under the Long-Term Care Policy, coverage under the Policy

began only after Ms. Temple stayed at Methodist Manor for twenty days. [*See* Pl.'s Expert[1] Dep.,

Doc. # 41-3, at 68:1–24, 77:6–13.] Thus, it is undisputed that Ms. Temple became eligible for

coverage on November 5, 2009. [*See id.*; Def. Mot. at 5.] It is further undisputed that because the

Policy paid benefits in arrears, no payment could have been due to Ms. Temple until sometime in

December. [*Id.*]

On November 5, 2009, the same day Ms. Temple became eligible for coverage, a

representative from Defendant sent claim forms to Mr. Temple at his law firm's address,[2] and

---

[1] Defendant has filed a Motion to Exclude Plaintiff's Expert [Doc. # 42], though Defendant relies on the expert's proffered testimony for purposes of supporting its Motion for Summary Judgment and demonstrating agreement between the parties on relevant issues. [*See* Def.'s Mot. at 3 n.2.] Thus, assuming for the purposes of this Motion that the testimony of Plaintiff's expert is admissible, summary judgment is appropriate for Defendant. Because the Court is granting the Motion for Summary Judgment under this assumption, it need not address the merits of the Motion to Exclude.

[2] Plaintiff claims Defendant violated its own internal practices when, in response to Mr. Temple's September 28, 2009, letter, Defendant sent claim forms to the address it had for Ms. Temple, as opposed to the address of Mr. Temple's law firm. [Pl.'s Resp. at 2–3.] However, it is undisputed that Defendant did mail the claim forms to Ms. Temple at her personal address on October 6, 2009, and that Defendant mailed the claim forms to Mr. Temple's law firm address on the day his mother became eligible for coverage, and nearly a month before any payment would have been due. [*See id.*; Noel Dep., Doc. # 69-2, at 109:11–21.] Additionally, it is undisputed that by the time Defendant received the completed claim forms from Mr. Temple, it had still not received the information it needed from third-party Methodist Manor. [Pl.'s Resp. at 4.] Thus, even if this Court assumes that Defendant possibly erred in initially mailing the claim forms to Ms. Temple, rather than Mr. Temple, that decision

requested nursing home bills from him. [Pl.'s Resp. at 3.] The representative also contacted

Methodist Manor, a third party, and requested a facility evaluation, medical records, medical bills,

cognitive test results, and a plan of care. [*See* 11/5/2009 Omaha Fax, Doc. # 41-11; Facility

Evaluation, Doc. # 41-12.] Although Methodist Manor submitted a facility evaluation, it did not

include the other requested items at that time. [*See* Facility Evaluation.]

On November 18, 2009, Mr. Temple contacted Defendant asking what it needed to complete

the claim. [Omaha  Activity Logs, Doc. # 41-8, at 5.] A representative from Defendant explained

that it had not received the completed claim forms from Mr. Temple, which had been sent thirteen

days previously. [*Id.*] Mr. Temple completed the claim forms by November 19, 2009, and they were

stamped as received by Defendant on November 24, 2009. [*See* Completed Claim Forms, Doc. # 41-

13.]

On December 2, 2009, early in the first month Ms. Temple could have received any payment,

a representative from Defendant again contacted third-party Methodist Manor to follow-up on the

items it had yet to receive. [Omaha Activity Logs at 4.] The representative also followed up with Mr.

Temple by calling his office and leaving a message to inform him of the status of the claim. [*Id.*;

12/2/2009 Temple Email, Doc. # 41-14, at 2] On December 7, 2009, Methodist Manor transmitted

the plan of care and medical records to Defendant. [Plan of Care, Doc. #41-15.] The previously

requested medical bills were still not included in this transmission. [*Id.*] Although the parties appear

to dispute the importance of the medical bills in processing the claim,[3] Plaintiff agreed at the hearing

_____

could not have caused the supposed delay in payment complained of in this case; Defendant
still needed the information from Methodist Manor to process the claim.

[3]  Defendant argues that it also required the medical bills, which were not received until
December 22, 2009, to fully analyze the claim at issue. [Def.'s Reply, Doc. # 69, at 11 (citing

and in his brief that, at a minimum, it was not until December 7, 2009, that Defendant had the information it needed to process Ms. Temple's claim. [*See* Pl.'s Resp. at 4; Pl.'s Expert Dep. at 79:20–82:9.]

On December 22, 2009, having still not received the medical bills, a representative from Defendant again contacted third-party Methodist Manor. [Omaha Activity Logs at 4.] In response to this call, Methodist Manor provided the requested medical bills. [Medical Bills, Doc. # 41-16.] The representative called Mr. Temple to inform him Defendant had received the bills, and that she would be out of the office during the holidays and return January 4, 2010. [Omaha Activity Logs at 5; 12/22/2009 Temple Email, Doc. # 41-17, at 2.]

On January 5, 2010, Mr. Temple contacted Defendant's representative. [Pl.'s Resp. at 4.] The parties dispute what occurred on that day. According to Plaintiff, the representative first called to say that the claim was payable, only to call later that day to explain that the claim required further review. [*Id*.] Defendant, however, claims that the representative spoke with Mr. Temple only once that day. [Def.'s Mot. at 8; Petrie Dep., Doc. # 62-5, at 124:1–13.] According to Defendant, during that call[4] the representative explained that benefits were payable, but that a care coordinator nurse would need to review the file to determine which level of benefits were payable based upon the level of care Ms. Temple received. [Def.'s Mot. at 8; Omaha Activity Logs at 3–4.]

---

their proffered expert).] Plaintiff disputes this assertion, and claims the medical bills were not required to begin processing the claim. However, even if this Court gives Plaintiff the benefit of the doubt and assumes that Defendant did not need the medical bills to process the claims, and agrees Defendant received all necessary records for processing the claim on December 7, 2009, for the reasons discussed herein Plaintiff has failed to establish a genuine dispute of material fact as to whether Defendant acted in bad faith.

[4] Defendant's records reflect only one call on January 5, 2010. [*See* Omaha Activity Logs at 3–4.]

4

The parties do not dispute that based upon the review of the care coordinator nurse, Defendant concluded on January 12, 2010, that benefits were payable to Ms. Temple at the highest level under the Policy. [Claim Acceptance, Doc. # 41-8; Omaha Activity Logs at 3.] Defendant's representative also called Mr. Temple the same day to inform him that benefits had been fully approved and were payable, and to determine where he wished for Defendant to send the check. [Omaha Activity Logs at 3.] In fact, an email from Mr. Temple's law office verifies he was asked to "[p]lease call . . . Mutual of Omaha Re: your mom. Claim is ready to go and be paid – she needs to verify some information with you." [1/12/10 Temple Email, Doc. # 41-9, at 2.] Plaintiff does not dispute Defendant's claim that Mr. Temple did not return this call or otherwise respond to Defendant, and there is nothing in the record indicating any response by Mr. Temple.

On January 14, 2010, having received no call back from Mr. Temple, Defendant issued a check for $7,105.00, which represented payment due under the Policy, and mailed that check to Ms. Temple's last known address[5] prior to her admission into Methodist Manor. [Benefits Check, Doc. # 41-21; Omaha Activity Logs at 3.] Ms. Temple passed away seven days later, on January 21, 2010.

---

[5] Confusion may have existed about the correct mailing address for Ms. Temple during the claim process because Defendant was given different addresses at different times: (1) Ms. Temple's home address on file when Defendant first sent her the claim forms, which was 1508 Scott Drive in Florence, South Carolina [9/30/2009 Claim Form Ltr., Doc. # 41-9; Pl's Resp. at 2]; (2) Mr. Temple's law firm address pursuant to his letter to Defendant, and where Defendant also mailed claim forms [11/5/2009 Claim Form Ltr., Doc. # 41-10; 9/28/2009 Temple Letter, Doc. # 41-6]; and the most recent address Defendant claims it had on file when Ms. Temple checked into Methodist Manor, which was her daughter's residence at 136 Rustic Manor Court in Lexington, South Carolina. [Benefits Check, Doc. # 41-21; Pl's Resp. at 16.] It is unclear from the record when and how Defendant acquired the address of Ms. Temple's daughter at Rustic Manor Court. According to the daughter's deposition, Ms. Temple moved in with her for about a month before going to Methodist Manor. [Teri Templ Dep., Doc. # 41-4, at 26:1–29:22.] Ms. Temple's daughter also testified that she had Ms. Temple's mail forwarded from Ms. Temple's Scott Drive address to her address at Rustic Manor Court sometime in the weeks following September 22, 2009. [*Id.*]

5

[Pl.'s Resp. at 4.] Although it is unclear when Mr. Temple himself received the check, the check indicates that he deposited the check on February 3, 2010, and the parties do not dispute that Mr. Temple deposited the check on this date. [*See* Benefits Check at 3.]

Although it is undisputed that Defendant issued the check on January 14, 2010, Plaintiff filed suit alleging breach of contract on January 20, 2010, nearly a week later.[6] It is also undisputed that all monetary benefits due under the Policy have been paid, and at no point did Defendant ever deny payment or refuse coverage. [*See* Def.'s Mot. at 10; Pl.'s Resp. at 5.]

## **Standard of Review**

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). Summary judgment is not "a disfavored procedural shortcut;" rather, it is an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Id*. Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *see also Hill Holliday Connors Cosmopulos, Inc. v. Greenfield*, 433 Fed. App'x 207, 213 (4th Cir. 2011) (explaining that under the facts of the case "no reasonable finder of fact would conclude" that

---

[6] Plaintiff waited nearly a year, until December 30, 2010, to add a cause of action for bad faith. [*See* Am. Compl., Doc. # 1-1.] The case was removed to this Court after the amendment.

judgment for the non-movant was appropriate).

If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id*. at 257. In determining whether a genuine issue has been raised, a court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962).

The existence of *a mere scintilla* of evidence in support of the non-movant's position is insufficient to withstand a summary judgment motion. *Id*. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'n Satellite Corp*., 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

7

**Discussion**

Summary judgment on both Plaintiff's bad faith and breach of contact claims is appropriate

in this case because the record here could not lead a rational juror to find for Plaintiff.

**I.     Bad faith in processing or delaying payment**

Although Defendant paid the claim at issue in full, and at no point denied payment or refused

coverage, Plaintiff claims that there is a dispute of material fact surrounding whether the time it took

Defendant to process and pay the claim was unreasonable and thus amounted to bad faith. The Court

disagrees.

South Carolina cases discussing bad faith almost universally involve cases where an

insurance company has denied coverage or payment. As this Court has recently explained, under

South Carolina law, "the elements of an action for bad faith under an insurance contract include: '(1)

the existence of a mutually binding contract of insurance between the plaintiff and the defendant;

(2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad

faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising

on the contract; (4) causing damage to the insured.'" *CRC Scrap Metal Recycling, LLC v. Hartford*

*Cas. Ins. Co.*, No. 7:12–146, 2012 WL 4903661, at \*7 (D.S.C. Oct. 15, 2012) (quoting *Crossley v.*

*State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 359–60, 415 S.E.2d 393, 396–97 (1992)).

While there was plainly a valid insurance contract in this case, there was no denial of either

coverage or payment.[7] It appears no South Carolina court has specifically recognized the cause of

action Plaintiff seeks to bring – an action for bad faith resulting only in a delayed payment.

---

[7] The parties also argue as to whether any supposed delay by Defendant caused damage to Ms.
Temple. Plaintiff appears to claim that Ms. Temple suffered psychological or emotional injury
by not knowing if her claim would be paid. However, it is not necessary to reach that issue.

Nonetheless, in discussing the contours of bad faith in certain denial of coverage cases, South

Carolina courts have held that "the covenant of good faith and fair dealing extends not just to the

payment of a legitimate claim, but also to the manner in which it is processed." *Mixson, Inc. v. Am.

Loyalty Ins. Co.*, 349 S.C. 394, 400, 562 S.E.2d 659, 662 (Ct. App. 2002) (citing *Tadlock Painting

Co. v. Md Cas. Co*., 322 S.C. 498, 501, 473 S.E.2d 52, 53 (1996)). The South Carolina Supreme

Court has further explained that "if an insured can demonstrate bad faith or unreasonable action by

the insurer in *processing a claim* under their mutually binding insurance contract, he can recover

consequential damages in a tort action." *Tadlock*, 322 S.C. at 501, 473 S.E.2d at 53 (emphasis

added) (quoting *Nichols v. State Farm Mut. Auto. Ins. Co.*, 279 S.C. 336, 340, 306 S.E.2d 616, 619

(1983)); *see also See Howard v. State Farm Mut. Auto. Ins. Co.*, 316 S.C. 445, 448, 450 S.E.2d 582,

584 (1994) (mentioning in dicta, while discussing an action involving bad faith refusal to pay, the

possibility that an insurance company might "not specifically deny the claim"). It therefore appears

that an action for bad faith under South Carolina law may not be strictly limited to cases where there

is a refusal by an insurance company to cover an individual or pay a claim.

However, even assuming that delay alone can form the basis of a bad faith cause of action

under South Carolina law, the crux of a bad faith case[8] is still whether "there is a reasonable ground

---

[8] During the hearing on the Motion for Summary Judgment, Plaintiff's counsel stated that "mere negligence" was sufficient to establish a cause of action for bad faith. The South Carolina Supreme Court has held that, in the context of trial, a jury is entitled to consider an insurer's negligence "on the issue" of determining whether an insurer's conduct was reasonable. *Nichols v. State Farm Mut. Auto. Ins. Co.*, 279 S.C. 336, 342, 306 S.E.2d 616, 620 (1983). However, the court has also explained that negligence and bad faith are separate causes of action. The South Carolina Supreme Court, in an action for bad faith, held that a negligence claim was not preserved for appeal because the victim pled only bad faith, and did not plead elements of negligence in her complaint. *See Kleckley v. Northwestern Nat. Cas. Co.*, 338 S.C. 131, 138–39, 526 S.E.2d 218, 221–22 (2000). In one of South Carolina's seminal insurance cases, *Tyger River Pine Co. v. Md. Cas. Co.*, 170 S.C. 286, 170 S.E. 346

for contesting [or delaying] a claim . . . ." *Crossley*, 307 S.C. at 360, 415 S.E.2d at 397; *see also*

*Helena Chem. Co. v. Allianz Underwriters Ins. Co.*, 357 S.C. 631, 645, 594 S.E.2d 455, 462 (2004)

("Under South Carolina law, an insurer acts in bad faith when there is *no reasonable basis* to support

the insurer's decision.") (emphasis added); *Varnadore v. Nationwide Mut. Ins. Co.*, 289 S.C. 155,

158, 345 S.E.2d 711, 714 (1986) (upholding jury instruction charging that "if there *is any reasonable*

*ground* for contesting the claim, there is no bad faith . . . .") (emphasis added). Under the undisputed

facts of this case, no rational trier of fact could find that Defendant lacked any reasonable ground

for the alleged delay. *See Monahan v. Cnty. of Chesterfield*, 95 F.3d 1263, 1265 (4th Cir. 1996).

First, Defendant complied with South Carolina's statute governing the processing of

insurance claims. *See* S.C. Code § 38-59-230.[9] Under the statute, an insurance company "shall direct

issuance of a check" within forty business days once "the insurer *is in receipt of all information*

*needed* and . . . which may be requested by an insurer which is reasonably needed by the insurer .

. . ." *Id*. (emphasis added). As Plaintiff's counsel acknowledged at the hearing, and as Plaintiff's own

---

(1933), the court held that an insurer could be liable for negligently failing to settle a case "unaccompanied by . . . bad faith . . . ." *See also Wheeler v. Dynamic Eng'g, Inc*., 62 F.3d 634, 641 (4th Cir. 1995) (applying Virginia law, which also defines bad faith in terms of reasonableness, to conclude that "mere negligence or error does not constitute bad faith"). Regardless of the interplay between negligence and bad faith, the cornerstone inquiry of a bad faith case is still whether the insurer's conduct was unreasonable, which is addressed at length in this order. *See Crossley v. State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 360, 415 S.E.2d 393, 397 (1992)).

[9] The Court acknowledges that the statutory provision at issue does not, on its face, displace the common law cause of action for bad faith. *See* S.C. Code § 38-59-230. However, even if compliance with the statute does not inherently preclude a cause of action for bad faith, when considered in light of the undisputed facts and the record in this case, Defendant's compliance with the code is certainly strong undisputed evidence of good faith.

proffered expert agreed, it was not until December 7, 2009,[10] that Defendant had the information it

needed from third-party Methodist Manor to even process Ms. Temple's claim.[11] [*See* Pl.'s Resp.

at 4; Pl.'s Expert Dep. at 79:20–82:9.] Thus, Defendant was in compliance with this statute so long

as it issued a check to Plaintiff by February 5, 2010.[12] Here, the check was mailed nearly a month

earlier, on January 14, 2010. Even though the check was  mailed to Ms. Temple's most recent

address on file, which was her daughter's residence on Rustic Manor Court, the check was still

deposited by Mr. Temple on February 3, 2010, within the statutory window.

---

[10] Plaintiff does not argue that it was unreasonable for Defendant to contact third-party
Methodist Manor on November 5, 2009, to request all of Ms. Temple's pertinent
information. To the extent Plaintiff argues that there is an issue of fact as to whether it was
unreasonable for Defendant to wait until December 2, 2009, to follow-up with Methodist
Manor to request the missing information, such an argument is unavailing. One, Ms. Temple
was not eligible to receive payment until December 2009. Two, Defendant followed-up with
Methodist Manor within a day of Ms. Temple becoming eligible to receive payment. Three,
by Plaintiff's own argument, there is an industry standard of approximately three weeks to
follow up on claim forms. [*See* Pl.'s Resp. at 18 (citing deposition testimony of a
representative of Defendant).] Although not a claim form, by analogy Defendant followed up
on its information request to Methodist Manor within a comparable time period, particularly
considering that three weeks from November 5, 2009, ended on a two-day Thanksgiving
holiday, and Defendant called Methodist Manor the immediately following week.

[11] Defendant was still waiting on the necessary information from third-party Methodist Manor,
and was thus unable to process Ms. Temple's claim, when it received the claim forms from
Ms. Temple. It therefore becomes irrelevant that the initial claim forms were sent to Ms.
Temple's home address at Scott Drive in Florence, rather than Mr. Temple's law firm
address.

[12] Because the statute speaks in terms of business days, this Court excluded Christmas Eve,
Christmas Day, New Years Day, and Martin Luther King, Jr. Day, which are South Carolina
state holidays, and weekends. *See* South Carolina Budget and Control Board, State Holiday
Schedule, http://www.ohr.sc.gov/OHR/applicant/OHR-holidays.phtm (last visited January 9,
2013); *see also Myers v. Kaufmann*, Report and Recommendation, C/A No.
2:10–2081–RMG–RSC, 2010 WL 4338097 at *2 n. 2 (D.S.C. Sept.16, 2010) (noting that a
court may take judicial notice of factual information located in postings on government
websites); *Williams v. Long*, 585 F.Supp.2d 679, 685–89 (D. Md. 2008) (noting that courts
have found postings on government websites as inherently authentic or self-authenticating).

11

Second, the Policy itself forbids Plaintiff from bringing legal action sooner than sixty days after the "required proof of loss" has been received by the insurer. [Long-Term Care Policy at 12.] Again, Defendant did not receive the required proof of loss information[13] from third-party Methodist Manor until December 7, 2009, at the earliest. Thus, under the terms of the Policy itself, legal action was prohibited until at least February 5, 2010, though Plaintiff filed suit at least two weeks sooner, on January 20, 2010. Moreover, on its face, this provision afforded Defendant time to process the claim and put Plaintiff on notice to expect a period of up to sixty days for processing once Defendant received proof of loss. *See, e.g*., *State Farm Fire & Cas. Co. v. Barrett*, 340 S.C. 1, 8–9, 530 S.E.2d 132, 135–36 (Ct. App. 2000) (holding that a court should give policy language its plain, ordinary and popular meaning)*; MGC Mgmt., Inc. v. Kinghorn Ins. Agency*, 336 S.C. 542, 548, 520 S.E.2d. 820, 823 (Ct. App. 1999) (holding that a court should reasonably determine the meaning of an insurance contract's provisions). As discussed above, payment was issued, received, and deposited within sixty days of December 7, 2009, when Defendant received the information from third-party Methodist Manor.

Third, the record in this case does not raise a jury question as to whether Defendant acted reasonably in paying the claim at issue. Defendant requested all material from Methodist Manor, a third party, on November 5, 2009, the very same day Ms. Temple became eligible for coverage and nearly a month before any payment could have been due to Ms. Temple. Defendant then mailed a check for payment of benefits at the highest level under the Policy within twenty-five business days of receiving the December 7, 2009, information from third-party Methodist Manor. Moreover, the

---

[13] Plaintiff's own proffered expert agreed that medical records, a plan of care, and cognitive test results were essential components of a proof of loss. [*See* Pl.'s Expert Dep. at 82:3–9.]

12

processing of Ms. Temple's claim occurred over a major holiday period. At no point did Defendant

ever deny coverage or refuse to pay benefits to Ms. Temple, nor did Defendant ever threaten to do

so. Plaintiff actually filed suit after Defendant had issued a full payment under the Policy.

Between December 7, 2009, when Defendant received information Plaintiff admits was

needed to make a coverage determination, and when Defendant mailed payment, Defendant kept Mr.

Temple apprised of the developments of the claim. On at least four occasions, a representative from

Defendant communicated with Mr. Temple regarding the claims. [*See* Pl.'s Resp. at 4; Omaha

Activity Logs at 4; 12/22/2009 Temple Email at 2; 1/12/10 Temple Email at 2.] In half of these

instances, Defendant was the party who initiated the communication. *Id.*; *see also Gaddy v. The*

*Guardian Life Ins. Co. of Am.*, Report and Recommendation,[14] No. 6:09–837–HMH–KFM, 2010

WL 2926578, at *14 (D.S.C. June 9, 2010) (finding no bad faith and holding that an insurance

company's actions were reasonable as a matter of law where insurance company requested necessary

information and followed up often with insured).

Unquestionably, the policy provided different levels of benefits and Defendant had to

determine which level applied here. Under South Carolina law, Defendant had a duty to "diligently

and in good faith" investigate and evaluate Ms. Temple's claim. *Royal Ins. Co. of Am. v. Reliance*

*Ins. Co.*, 140 F. Supp.2d 609, 617 (D.S.C. 2001) (applying South Carolina law); *see also Flynn v.*

*Nationwide Mut. Ins. Co.*, 281 S.C. 391, 395–96, 315 S.E.2d 817, 820 (Ct. App. 1984) ("An insurer

has a good faith duty to investigate a claim.") (citing numerous cases). It would seemingly create

a conflict with Defendant's good faith duty to investigate the insurance claim to hold that Defendant

---

[14] The Report and Recommendation was adopted by the district court, 2010 WL
2926577 (July 23, 2010), and affirmed by the Fourth Circuit, 497 Fed. App'x 763 (2011).

13

could be liable for bad faith by spending approximately one month[15] to investigate and remit

payment on the claim, even though it remained in contact with Mr. Temple throughout that time.

In at least one prior South Carolina case, which is more than ninety years old but remains

good law, the South Carolina Supreme Court held that an insurance company had a right to delay

payment until it could ascertain who was entitled to payment. *Stevens v. Hartford Fire Ins. Co.*, 113

S.C. 462, 462, 101 S.E. 843, 844 (1920) (holding that insured suffered no actual damages as a result

of the delay in payment). In reversing the trial court, the Supreme Court explained, "The [insurance

company] had the right to delay the payment . . . until they could ascertain who was entitled to be

paid . . . . The evidence shows that they paid the full amount contracted for under the provisions of

the Policy, to the proper party, and that they should not be made to pay again." *Id*. Here, like the

insurance company in *Stevens*, any delay by Defendant resulted primarily from its investigation and

Defendant ultimately paid the full amount owed under the Policy.

In an effort to argue that a genuine dispute of material fact exists as to whether Defendant's

conduct was reasonable, Plaintiff relies heavily on the fact that payment was sent to Ms. Temple's

latest address on file, which was her daughter's residence on Rustic Manor Court, instead of to Mr.

Temple at his law firm address. However, Plaintiff's argument fails. Defendant's representative

phoned Mr. Temple specifically to inquire as to where Defendant should send payment. [*See* Petrie

Dep., Doc. # 41-20, at 179:1–15.] Plaintiff's own records evidence that Mr. Temple was informed

by his staff to "[p]lease call . . . Mutual of Omaha Re: your mom. Claim is ready to go and be paid

– [the representative] needs to verify some information with you. " [*See* 1/12/10 Temple Email at

---

[15] When examined in light of when Defendant finally received the requested medical bills on December 22, 2009, the time Defendant spent to fully investigate and remit payment on the claim shrinks to three weeks (or fourteen business days as a result of the holidays).

2.] In spite of Defendant's effort to ensure it sent the check to the desired address, there is nothing

in the record showing that Mr. Temple ever returned the call or otherwise responded to this

communication. Accordingly, under the evidence in the record, no rational juror would find

Defendant's decision was unreasonable, particularly in light of the representative's attempt to

determine or verify the current correct address for payment and the fact that Mr. Temple actually

received and deposited the check within the statutory forty days and within the sixty-day period in

the Policy.[16]

At most, Plaintiff has shown that Defendant's representative was mistaken about where to

send the check.[17] Even assuming such a mistake, this does not rise to the level of bad faith. *See*

*Snyder v. State Farm Mut. Auto. Ins. Co.*, 586 F.Supp.2d 453, 463 (D.S.C. 2008) (granting summary

judgment in favor of insurer under South Carolina law and holding "[t]here has been no evidence

presented that [the d]efendant did anything other than erroneously estimate the overall value of [the

plaintiff's] bodily injury claim, which was simply making a costly mistake, not acting in bad faith.");

*see also Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 641 (4th Cir. 1995) (applying Virginia law,

which also defines bad faith in terms of reasonableness, to conclude that "mere . . . error does not

---

[16]  Again, even if confusion existed as to where to mail the check, Defendant made efforts to
    remedy this confusion by way of its unreturned call to Mr. Temple. This was actually in
    compliance with Plaintiff's argument that all "correspondence" and "contact" should go
    through Mr. Temple's office. [*See* Pl.'s Resp. at 62.] It was only when Mr. Temple himself
    failed to respond that Defendant sent the check, which was made out to Ms. Temple, to her
    daughter's home address at Rustic Manor Court.

[17]  As previously discussed, to the extent Defendant made a mistake about where to send the
    claim forms, such a mistake is irrelevant because the claim forms were ultimately sent,
    completed, and returned to Defendant before it even obtained the necessary information from
    third-party Methodist Manor.

constitute bad faith").[18]

Although there appear to be no cases within South Carolina, or applying South Carolina law, which have addressed an action for bad faith based solely on a delay in payment, other courts have analyzed similar bad faith laws and found that a short delay in payment fails to amount to unreasonableness as a matter of law. *See, e.g.*, *Neal v. State Farm Fire and Cas. Co.*, 908 F.2d 923, 926 (11th Cir. 1990) (affirming summary judgment, and holding that delay of four months was reasonable by explaining that "aside from the delay itself, [the insured] has failed to present any evidence showing bad faith on the part of [the insurer]. In fact, [the insurer's] payment . . . is evidence that negates a finding of bad faith."); *Howard v. Certain Underwriters at Lloyd's of London*, No. CV–09–1042, 2011 WL 1103040, at *11 (D. Ariz. March 25, 2011) ("Courts have rejected bad faith claims based on unreasonable delay when the insurer provided an initial offer or determination within a month or two after the claim was filed."); *Morrisville Pharm., Inc. v. Hartford Cas. Ins. Co.*, No. 09–CV–02868, 2010 WL 4323202, at *5 (E.D. Pa. Oct. 29, 2010) (granting summary judgment for insurer and explaining that the plaintiff's "claim is based on a delay in investigating the claim, and not on an adverse decision rendered by [the d]efendant. [The p]laintiff cites to no case law in which a court permits a claim for bad faith based upon an insurer taking five months to investigate a claim, only three of which followed the claimant's submission of

---

[18] Although disputed by Defendant and Defendant's records, Plaintiff asserts that Defendant's representative called twice on January 5, 2010 – once to inform Mr. Temple that the claim was approved and that payment would be forthcoming, and a second time to explain she had been mistaken and that a care coordinator nurse needed to review the claim. [Pl.'s Resp. at 4.] Even assuming Plaintiff's version of events as true, it is undisputed that a care coordinator nurse did review the claim, that within seven days Defendant determined that Ms. Temple was entitled to payment at the highest levels under the Policy, that Defendant issued payment, and that payment was received and deposited. As discussed herein, at most Plaintiff has shown a simple mistake by Defendant. *See Snyder*, 586 F.Supp.2d at 460–63.

proof-of-loss statements."); *Milhone v. Allstate Ins. Co.*, 289 F.Supp.2d 1089, 1097 (D. Ariz. 2003)

(granting summary judgment in favor of insured, and holding "the total time from claim to payment

attributable to [the d]efendant in this case was approximately 7 weeks. Therefore, [the p]laintiff's

conclusions of lengthy delay and unreasonable delay are not supported by the record in this case");

*Westers v. Auto–Owners Ins. Co.*, 711 F.Supp. 947, 949–50 (S.D. Ind. 1989) (stating that an insurer

acted "promptly" when it denied a claim a little over a month after the insured's proof of loss was

submitted); 14 Couch on Insurance § 207:3 (3d ed.) ("There can be no 'unreasonable delay' by [an]

insurer to process claim until [the] insurer receives adequate information.").

      Therefore, for the reasons discussed above, the evidence offered by Plaintiff fails to show

that there is a genuine issue for trial regarding whether Defendant's actions were in bad faith.

## II.    Breach of contract

      Plaintiff's breach of contract claim stems directly from Defendant's supposed

unreasonableness in delaying payment. In alleging a breach of contract, Plaintiff's Amended

Complaint charged that Defendant did not handle the claim "in a reasonable and timely fashion

therefore breaching the terms of [the Policy]." [*See* Am. Compl., Doc. # 1-1, at ¶ 11.] Further, the

parties' briefings and arguments during the hearing – as they related to the breach of contract action

– focused chiefly on the issue of damages and not on liability.

      As thoroughly discussed throughout this Order, Plaintiff's have failed to create a genuine

dispute of material fact as to whether Defendant's supposed delay in payment was unreasonable.

Because the complained of breach is predicated upon Defendant's reasonableness, it logically

follows that summary judgment is also appropriate in Defendant's favor as to Plaintiff's breach of

contract claim.[19]

### Conclusion

The record in this case, taken as a whole, could not lead a rational finder of fact to hold that Defendant either engaged in bad faith or breached its contract with Plaintiff.

Defendant complied with South Carolina Code § 38-59-230 as it issued payment within forty business days after it received the information it needed to process the claim. Defendant also issued payment within the sixty-day period called for in the underlying Policy. Plaintiff deposited this payment within both the statutory window and the policy's time frame.

Further, unlike the other South Carolina cases on point, Defendant never refused coverage for Ms. Temple or denied payment on her claim. In fact, Plaintiff filed this lawsuit nearly a week *after* Defendant issued payment in the full amount due under the highest levels of the Policy. Moreover, by Plaintiff's own admission, Defendant processed the claim within twenty-five business days of receiving the necessary information from a third party, and did so over a major holiday period.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 41], is **GRANTED**, and this case is dismissed, *with prejudice*, in its entirety.

**IT IS FURTHER ORDERED** that all outstanding motions are **DENIED** as moot.

---

[19] The "Legal Action" provision in the Policy required Plaintiff to wait sixty days after proof of loss before filing suit, and put Plaintiff on notice to expect a period of up to sixty days for processing once proof of loss was received. [Long-Term Care Policy at 12.]

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
January 28, 2013